## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

**10 MAR 22  AM 11: 50**

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

NICHOLAS A. MACKALL; NICHOLAS A.    )
MACKALL, with his natural parents TIMOTHY  )
W. MACKALL and STEPHANIE K. MACKALL, )
collectively; and ALEXANDRA F. MACKALL,  )
a minor, by and with her natural parents, TIMOTHY )
W. MACKALL and STEPHANIE K. MACKALL, )
collectively,    )
   )
     Plaintiffs,    )
   )
*v.*    )
   )
CATHEDRAL TRUSTEES INC., d/b/a    )
CATHEDRAL HIGH SCHOOL; JOSEPH M.   )
DEZELAN, in his individual capacity and under  )
Cathedral Trustees, Inc.; STEPHEN J. HELMICH, )
in his individual capacity and under Cathedral  )
Trustees, Inc. and Cathedral High School; DAVID )
P. LEWIS, in his individual capacity and under  )
Cathedral Trustees, Inc.; DAVID L. WORLAND, )
in his individual capacity and under Cathedral High )
School; JAMES MCLINN, in his individual  )
capacity and under Cathedral High School;  )
DENISE FARRELL, in her individual capacity and )
under Cathedral High School; THOMAS R.  )
GREER, in his individual capacity and under  )
Cathedral High School; KATHLEEN SAUM, in her)
individual capacity and under Cathedral High  )
School; MICHAEL MOFFATT, in his individual  )
capacity and under Cathedral High School; GREG )
BAMRICK, in his individual capacity and under  )
Cathedral High School; HEATHER CHANDLER, )
in her individual capacity and under Cathedral High )
School; KATHY PIVONKA, in her individual  )
capacity and under Cathedral High School;  )
RHONDA LOW, in her individual capacity and  )
under Cathedral High School; BRYAN   )
BANSCHBACH, in his individual capacity and  )
under Cathedral High School; MELINDA P.  )
LUCKEY-BUNDY, in her individual capacity and )
under Cathedral High School; MARC   )
BEHRINGER, in his individual capacity and under )

CIVIL ACTION

Civil Action No.:

**1 : 10 -cv- 0 3 3 9 RLY -JMS**

Cathedral High School; JOHN DOES 1–20, each in )
their individual capacity and under Cathedral High )
School.                                                          )
                                                                 )
and                                                              )
                                                                 )
INDIANA DEPARTMENT OF EDUCATION;                                 )
DR. TONY BENNETT, Superintendant of                              )
Public Instruction of the State of Indiana.                      )
                                                                 )
and                                                              )
                                                                 )
UNITED STATES DEPARTMENT OF                                       )
EDUCATION; ARNE DUNCAN, Secretary of                             )
the Department of Education of the United                        )
States.                                                          )
                                                                 )
Defendants.                                                      )   **JURY TRIAL DEMANDED**

## COMPLAINT

COMES NOW, Plaintiffs, Nicholas A. Mackall; Nicholas A. Mackall with his natural parents, Timothy W. Mackall and Stephanie K. Mackall, collectively; and Alexandra F. Mackall, a minor, by and with her natural parents, Timothy W. Mackall and Stephanie K. Mackall, collectively, allege on information and belief based, *inter alia*, on the investigation of legal counsel, except as to those allegations which pertain to the Plaintiffs, which are based upon personal knowledge and belief, state as follows:

## INTRODUCTION

Imagine waking-up one day and unexpectedly learning from a college volleyball coach employed by a university where your son is seeking admission that this university has received a transcript of his educational history that included a bunch of grades of "Incomplete," rather than letter grades. Upon receipt of this information, we (the parents) initiated an investigation. Our

investigation was brief. Within twenty-four hours, the president of our children's school informed us that, in fact, the inaccurate and incomplete transcript was intentional and that furthermore, *he* would not correct it—*he* didn't have to…or so he claimed.

During the next four- (4) months – a full semester – we worked non-stop in an attempt to have our son's school repair his educational history. Without proper credit for work our son had completed, he was ineligible for continued education. Finally, upon the intervention of Gerald S. Zore, a Marion County Superior Court Judge, in his capacity as a school board member, the president of our children's school board relented, removed the inaccurate grades from our son's educational history and redistributed a newly updated transcript to all the colleges and universities where our son sought admission. Each disclosure of information occurred without our son's knowledge or consent.

During the period of time where our son was ineligible for college admission, neither the Indiana Department of Education nor the United States Department of Education would intervene or help to resolve the situation, even though each incident occurred within *the* government-run educational marketplace, a jurisdiction clearly outside of the control of our children's school.

After our son's educational history had been updated, negotiations ensued over the legality of the occurrence(s) and over cost. We gave on the issue of cost however, the school board chairman [d]emanded that we (the parents) waive our sons legal right to bring any legal claim against the school. We declined. Our son was eighteen his constitutional rights were and remain his own. Unable to reach an agreement acceptable to each party, the school retaliated by dismissing our daughter.

3

Sadly, these events actually took place. They occurred at one of the oldest and most well established high schools in Indiana. Fortunately, the protections afforded residents of this great nation assure that they will not be deprived of personal liberties by their government. These protections demand that this abuse of power be nullified and emphatically condemned.

## JURISDICTION AND VENUE

1.     This action arises under the First, Fourth and Fourteenth Amendment to the Constitution of the United States.

2.     This court has federal question jurisdiction under the RICO claim 28 U.S.C. §§ 1331 and 18 U.S.C. § 1964(c); under 42 U.S.C. §§ 1981, 1983 and 1994; and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. 1367.

3.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1965.

## PARTIES

4.     Plaintiffs, Nicholas A. Mackall and Alexandra F. Mackall and their natural parents and next friends, Timothy W. Mackall and Stephanie K. Mackall, at all pertinent times and currently are residents of Carmel, Hamilton County, Indiana.

5.     Defendant, Cathedral Trustees Inc, d/b/a Cathedral High School, is an Indiana Non-Profit, Domestic Corporation with its principal place of business located at 5225 East 56th Street, Indiana, IN 46226.

6.     Defendant, Joseph M. Dezelan is Chairman of the Board of Trustees and an adult residing in this judicial district at 1227 Westfield Court, Indianapolis, IN 46220 and

4

under Cathedral Trustees Inc. with a principal office address of 5335 North Tacoma Street, Suite 16, Indianapolis, IN 46220. He is being sued herein in both his official and individual capacity.

7. Defendant, Stephen J. Helmich is President of the Board of Trustees and an adult residing in this judicial district at 307 Galahad Drive, Franklin, IN 46131 and under Cathedral Trustees Inc. with a principal office address of 5225 East 56th Street, Indianapolis, IN 46226. He is being sued herein in both his official and individual capacity.

8. Defendant, David P. Lewis is Chairman of the school board Finance Committee and an adult residing in this judicial district at 9029 Diamond Pointe Drive, Indianapolis, IN 46236 and under Cathedral Trustees Inc. with a principal office address of Eli Lilly and Co, Lilly Corporate Center, Indianapolis, IN 46285. He is being sued herein in both his official and individual capacity.

9. Defendant, David L. Worland is a Cathedral High School Administrator and an adult residing in this judicial district at 6893 Riverside Way, Fishers, IN 46038. He is being sued herein in both his official and individual capacity.

10. Defendant, James McLinn is a Cathedral High School Administrator and an adult residing in this judicial district at 1234 North Harbison Avenue, Indianapolis, IN 46219. He is being sued herein in both his official and individual capacity.

11. Defendant, Denise Farrell, formerly a Cathedral High School Administrator during the 2007-2008 school year and an adult residing in this judicial district at 5862

East Fall Creek Parkway North Drive, Indianapolis, IN 46226. She is being sued herein in both her official and individual capacity.

12.    Defendant, Thomas R. Greer is a Cathedral High School Administrator and an adult residing in this judicial district at 6545 North Olney Street, Indianapolis, IN 46220. He is being sued herein in both his official and individual capacity.

13.    Defendant, Kathleen Saum is a Cathedral High School Administrator and an adult residing in this judicial district at 6720 Creekridge Trail, Indianapolis, IN 46256. She is being sued herein in both her official and individual capacity.

14.    Defendant, Michael Moffatt, a Cathedral High School Teacher and an adult residing in this judicial district at 5531 Armstrong Drive, Indianapolis, IN 46237. He is being sued herein in both his official and individual capacity.

15.    Defendant, Greg Bamrick, a Cathedral High School Teacher and an adult residing in this judicial district at 6231 Welker Drive, Indianapolis, IN 46236. He is being sued herein in both his official and individual capacity.

16.    Defendant, Heather Chandler, a Cathedral High School Teacher and an adult residing in this judicial district at 303 East 34th Street, Indianapolis, IN 46205. She is being sued herein in both her official and individual capacity.

17.    Defendant, Kathy Pivonka, a Cathedral High School College Counselor and an adult residing in this judicial district at 7204 Hollingsworth Drive, Indianapolis, IN 46268. She is being sued herein in both her official and individual capacity.

18.     Defendant, Rhonda Low, a Cathedral High School Teacher and an adult residing in this judicial district at 7729 East 1075 North, Indianapolis, IN 46259. She is being sued herein in both her official and individual capacity.

19.     Defendant, Bryan Banschbach, a Cathedral High School Teacher and an adult residing in this judicial district at 10231 Trenkamp Court, Indianapolis, IN 46236. He is being sued herein in both his official and individual capacity.

20.     Defendant, Melinda P. Luckey-Bundy, a Cathedral High School Teacher and an adult residing in this judicial district at 7158 East 65th Street, Indianapolis, IN 46256. She is being sued herein in both her official and individual capacity.

21.     Defendant, Marc Behringer, a Cathedral High School Teacher and an adult residing in this judicial district at 14606 Shadow Lakes Drive, Carmel, IN 46032. He is being sued herein in both his official and individual capacity.

22.     Defendants, John Does 1 – 20, are faculty, staff, and school board members whose identities will be known through the discovery process. Plaintiffs will seek to amend this Complaint to state the true and accurate names and capacities of these defendants when the relevant information has been obtained. They are all adults residing in this judicial district and all are being sued herein in both their official and individual capacity.

23.     Defendant, Dr. Tony Bennett is sued in his official capacity as Superintendant of Public Instruction of the State of Indiana. He may be served with process at Room 229, State House, Indianapolis, IN 46204-2789.

24.     Defendant, Arne Duncan is sued in his official capacity as Secretary of the Department of Education of the United States. He may be served with process at 400 Maryland Avenue, SW, Washington, DC 20202.

## FACTS

25.     Education is a centrally organized enterprise of the United States Government.

26.     Education is a centrally regulated and enforced enterprise of and by the United States Government.

27.     The Department of Education Organization Act of 1979, Pub. L. No. 96-88, (Oct. 17, 1979) created the Department of Education.

28.     The United States Department of Education ("USDOE") is an agency of the United States Government. Congress has empowered the USDOE to extend federal financial assistance to educational programs and activities and to effectuate regulation of the departments' accords and funding recipients.

29.     The USDOE is the primary educational regulatory and enforcement agency of the United States Government.

30.     A primary responsibility of the USDOE is the auditing or evaluating Federal or State supported education programs or enforcing Federal laws which relate to those programs.

31.     The Office of Civil Rights ("OCR") evaluates complaints and enforces civil rights violations for the USDOE.

8

32.     The Family Policy Compliance Office ("FPCO") is charged with implementing two laws that seek to ensure student and parental rights in education: the Family Educational Rights and Privacy Act ("FERPA" or "Act") and the Protection for Pupils Rights Amendment ("PPRA") for the USDOE.

33.     FERPA is a federal law that protects the privacy of student education records. Congress enacted FERPA under its spending power authority to condition the receipt of federal funds on certain requirements relating to access and disclosure of student educational records. The Act directs the Secretary of the USDOE to withhold funds from any public or private educational agency or institution that fails to comply with these conditions[1].

34.     Additionally, FERPA defines ownership of student records. Under FERPA parents maintain rights with respect to their children's records. These rights transfer to the student when he or she reaches the age of eighteen or attends a school beyond the secondary level.

35.     Arne Duncan, Secretary of the Department of Education, is responsible for developing and administering USDOE programs and policy.

36.     Secretary Duncan was delivered Notice of Plaintiffs Intent to Sue on January 26, 2010. Notice and Certified Mail Receipt are attached herewith as (Exhibit 1).

37.     The high rate of illiteracy was a particular concern of the delegates of the Indiana Constitutional Convention of 1850. Their constitutional remedy was to charge the Indiana

---

[1] *Gonzaga v. Doe* 536 U.S. 273 (2002).

General Assembly ("IGA") with the responsibility to "encourage" learning "by all suitable means" and to provide "for a general and uniform system of Common Schools" that is "equally open to all" and where tuition shall be "without charge." Ind. Const. art. VIII, § 1.

38.    The IGA has plenary power over public schools.

39.    The Indiana State Board of Education ("ISBE") is an agency of the state of Indiana. The IGA established the ISBE to oversee state education policy-making.

40.    The ISBE has authority over the distribution of state funds, accreditation of local schools and adoption of textbooks for use in the schools.

41.    The Superintendent of Public Instruction chairs the ISBE and is the designated Chief State School Officer. The office of the Superintendent of Public Instruction was created by Ind. Const. art VIII, § 8.

42.    The Indiana Department of Education ("IDOE") is an agency of the state of Indiana. The IDOE is the primary education regulatory and enforcement agency for the state of Indiana.

43.    Dr. Tony Bennett, the Superintendent of Public Instruction, is responsible for developing and administering ISBE and IDOE programs and policy.

44.    Dr. Bennett was delivered Notice of Plaintiffs Intent to Sue on January 25, 2010. Notice and Certified Mail Receipt are attached herewith as (Exhibit 2).

45.     Cathedral Trustees Inc. is an Indiana, non-profit, Domestic Corporation with its principal offices located at 5225 East 56th Street, Indianapolis, IN 46226. The corporation is exempt from gross income tax under Indiana Code ("IC") § 20-12-70-2.

46.     Cathedral Trustees Inc., incorporated November 27, 1972 does business as Cathedral High School ("CHS") (collectively the "CHS enterprise"). A list of the members of the (2008) CHS Trustees Board of Directors are attached herewith as (Exhibit 3).

47.     CHS is a non-affiliated Roman Catholic secondary school wherein tuition by charge.

48.     Tuition by charge, in return for an education is a contract[2].

49.     Upon information and belief, CHS does not receive federal financial assistance under any program administered by the USDOE. As a result, CHS is not subject to any provision of FERPA.

50.     Upon information and belief, all or substantially all CHS students are eligible for federal financial assistance under programs administered by the USDOE. Nevertheless, CHS students do not enjoy any FERPA protections.

51.     The Indiana Constitution provides that no money shall be drawn from the treasury for the benefit of any religious or theological institution under Ind. Const. art I, § 6.

52.     Upon information and belief, CHS is an eligible recipient for state financial assistance under IC 4-30-17-2.

---

[2] *Runyon v. McCrary*, 427 U.S. 160 (1976).

53.    Upon information and belief, CHS received $50,000.00 from the Build Indiana Fund ("BIF").

54.    Upon information and belief, CHS acquired BIF funds as a "local project", as defined by IC 4-30-17-4.1(3)(E), to renovate or generally improve building structure of a school science laboratory.

55.    Funds used to improve facilities are permanent and endure to the benefit of the school and schools' students for decades.

56.    Upon information and belief, BIF is administered by the Treasurer of the State of Indiana.

57.    The ISBE has established a performance-based accreditation system available to non-public schools. The standards for accreditation are the same standards required of all public schools under IC § 20-1-1.2-2.

58.    By information and belief, accreditation of non-public schools by the ISBE is an agreement between the parties, whereby the petitioner school, including CHS, becomes licensed by the state and thereafter operates based on standards set by the state. Among other benefits and guarantees, accreditation facilitates eligibility of petitioner schools' students for:

    (a)    state financial assistance for post-secondary education; and

    (b)    participation in Indiana High School Athletic Association ("IHSAA") sports and events, among others.

59.    At all material times thereafter, CHS an agent, by contract, of the ISBE as a Freeway Accredited School, and therefore act on behalf of ISBE and therefore act on behalf of IDOE.

60.    CHS represents itself to the public and operates in fact as a "Catholic college preparatory high school, provides, to a diverse group of students, Opportunities for spiritual, intellectual, social, emotional and physical growth through service and academic excellence[3]." Furthermore, they claim to be "a model for all high schools."

## PLAINTIFF NAM

61.    At all material times, Plaintiff-student, Nicholas A. Mackall ("NAM") was enrolled and in attendance at CHS since August of 2004. He was in the twelfth grade during the 2007-2008 school year.

62.    Plaintiff-student NAM was a co-signatory of a personal student/student family contract with CHS. Student/student family contracts were executed annually.

63.    By information and belief, Plaintiff-student NAM completed all or substantially all work required of him during the 2007-2008 school year while in attendance at CHS.

64.    By information and belief, Plaintiff-student NAM received from CHS an honor recognizing his extraordinary attendance record. Plaintiff-student NAM was in attendance and without absence during the entirety of his four-year enrollment at CHS.

## THE CHS FRAUD SCHEME

---

[3] Cathedral High School Mission Statement located at www.cathedral-irish.org.

65.     Between in or about April 2007 and July 2007 the CHS school board finance committee, reasonably consisting of between eight- (8) and twelve- (12) members, whose identities will be learned through the discovery process, did knowingly combine, conspire, confederate and agree together and with other persons, to commit offenses against students enrolled at CHS, namely to knowingly and willfully devise a scheme and artifice to defraud students, through willful acts of theft by omission, of grades earned, for the purpose of obtaining money. A copy of a student/student family contract amendment (the "CHS Fraud Scheme"), proposed by the school boards finance committee, is attached herewith as (Exhibit 4).

66.     Between in or about August 2008 and December 2008, the CHS enterprise, specifically Defendants Stephen J. Helmich ("SJH"), Indiana Educator License No. 351214, David L. Worland ("DLW"), Indiana Educator License No. 596095 and 428361, James McLinn ("JM"), Indiana Educator License No. 968721, Denise E. Farrell ("DEF"), Indiana Educator License No. 644489, expired 10/27/2002 and 390890, Thomas R. Greer ("TRG"), Indiana Educator License No. 613694, expired 01/09/2001 and 285801, Kathleen Saum ("KS"), Indiana Educator License No. 1000251, by the authority of Joseph M. Dezelan ("JMD"), Indiana Educator License No. 177618 and David P. Lewis ("DPL"), chairman of the school's finance committee, as a punitive measure and in violation of the student/student family contract, to compel payments to the CHS enterprise, set new and unlawful precedents by:

        a)      instructing teachers *not* to grade final examinations of a specific class of students, including the Plaintiffs;

b)      instructing teachers *not* to apply final examination scores if graded to the Permanent Educational History ("Record" or "Records") of a specific class of students, including the Plaintiff's;

c)      instructing teachers *not* to speak, show, advise or generally provide scores to a specific class of students, including the Plaintiff's, including final examination and/or semester cumulative scores, among potentially others; and

d)      all CHS Defendants were aware and did know that carrying-out the aforementioned acts or actions would cause an inaccurate Record to be maintained by each participant teacher, for each student, of a specific class of students, including the Plaintiff's.

67.     By information and belief, teachers of Plaintiff-student NAM would and did omit posting of relevant test scores, pursuant to the instructions of CHS Defendants, JMD, DPL, SJH, DLW, JM, DEF, TRG, KS and others, including semester final examination scores, among potentially other scores, in furtherance of the conspiracy.

68.     The conspirators would and did surreptitiously cause the alteration of student grades, through willful acts of theft by omission, to post upon the Record of a specific class of students known only to the conspirators, including the Plaintiff's.

69.     Schools, including teachers, employees, administrators and board members are custodians of student scores and grades and education Records.

70.     Student scores and grades and education Records are the proprietary property of the student or the student's family, which is age dependant.

15

71.    The acquisition of knowledge obtained through a course of study is an asset of immeasurable value to a student, a student's family and to society in general.

72.    Plaintiff-student NAM gained knowledge while in attendance at CHS.

73.    All knowledge gained by Plaintiff-student NAM is his proprietary property.

74.    Any and all knowledge gained by Plaintiff-student NAM, whether within or without attendance of CHS, was and remains for now and forever more, exclusively his own.

75.    The asset of knowledge accumulates from year-to-year, and is periodically archived, by rule of law, in the form of a Record.

76.    Education Records are a cumulative accounting of knowledge gained and an intellectual property of ever increasing value, much like a patent or copyright.

77.    Plaintiff NAM, Timothy W. Mackall ("TWM") and Stephanie K. Mackall ("SKM"), collectively, were, at all times, co-owners of Plaintiff-student NAM's education Record prior to his eighteenth birthday, which occurred during October of 2007. Upon the passing of his eighteenth birth date Plaintiff-student NAM assumed full and complete ownership over his educational Records.

78.    Records are 'maintained' upon the recording of a grade or score into a teacher's grade book[4].

---

[4] *Owasso Independent School District v. Falvo*, 534 U.S. 426 (2002).

16

79.     Intentional failure by CHS to grade or the willful failure to apply scores and grades to an education Record, including the Plaintiff's, would be theft of proprietary property.

80.     The total of grade changes caused by the conspirators had the effect of reducing and/or eliminating the Plaintiff's overall grade point average.

81.     The total of grade changes perpetrated by the conspirators had the effect of significantly devaluing the Plaintiff's proprietary property.

82.     CHS maintained an incomplete Record for Plaintiff-student NAM as a result of its intentional failure to grade and its willful failure to apply scores and grades to the Plaintiff's Record, including semester examination scores, among potentially others.

83.     The Plaintiff's Records, including scores and grades, are the primary source of evidence of his educational accomplishments. Disclosure of student Records to post-secondary educational institutions is a requirement for admission consideration.

84.     The Plaintiff, as a senior during the 2007-2008 school year, began the post-secondary admission process.

85.     By information and belief, an accredited school, including CHS, does not and, in fact, would not allow Plaintiff-student NAM nor Plaintiff NAM, TWM and SKM, collectively, to act on behalf of the Plaintiff, as an agent, for the purpose of distributing and disclosing the Plaintiff's Records to any or all post-secondary educational institutions where the Plaintiff sought admission.

86.     Neither Plaintiff-student NAM nor Plaintiff NAM, TWM and SKM, collectively, were offered or afforded any opportunity to compile, review, distribute or disclose any Records of Plaintiff-student NAM, for the purpose of his obtaining admission to a post-secondary educational institution.

87.     Defendant, CHS enterprise would not and did not allow Plaintiff-student NAM nor Plaintiff NAM, TWM and SKM, collectively, to generally control or manage the admission process on behalf of Plaintiff-student NAM.

88.     As a result, Defendant, CHS enterprise assigned an agent to act and interact for and on behalf of students, including Plaintiff-student NAM, during the post-secondary admission process.

89.     By information and belief, at all materials times, Defendant, Kathy Pivonka ("KP"), CHS college advisor, was assigned and did act as agent and representative for Plaintiff-student NAM specifically for the purpose of controlling the search and admission process to a post-secondary educational institution of the Plaintiff's choice.

90.     During in or about the week of January 21, 2008, in furtherance of the CHS Fraud Scheme, Defendant KP, as assigned agent and representative for Plaintiff-student NAM, did knowingly and intentionally distribute and disclose incomplete Records of Plaintiff-student NAM to six- (6) colleges and universities including: Indiana University-Bloomington, Butler University, University of Dayton, Xavier University, Marquette University and Boston College.

91.     By information and belief, Indiana University-Bloomington, Butler University, University of Dayton, Xavier University, Marquette University and Boston College

thereafter, gained access and subsequently took possession of Plaintiff-student NAM's Records.

92.     By information and belief, KP, at all material times, was aware that Records maintained by CHS for Plaintiff-student NAM, including five- (5) intentionally altered grades, represented an 'incomplete' and inaccurate work history.

93.     By information and belief, KP did understand and know that disclosure of Records, including an incomplete work history, to any college or university, would eliminate Plaintiff-student NAM from admission consideration by every post-secondary educational institution gaining access to Plaintiff-student NAM's Records.

94.     At all material times, CHS disclosed the Plaintiff's Records through the United States Postal Service ("USPS") and through Docufide, an interstate wire transfer service in furtherance of the CHS Fraud Scheme.

95.     The CHS Fraud Scheme violated the federal mail and wire fraud statutes, Title 18 U.S.C. §§ 1341 and 1343, in that the scheme was intended to fraudulently obtain money from persons through the use of the USPS and interstate wire communications, including the transmission of electronic mail and messages and telephone calls between CHS and Indiana University-Bloomington, Bloomington, IN; between CHS and Butler University located in Indianapolis, IN; between CHS and Xavier University located in Cincinnati, OH; between CHS and Marquette University located in Milwaukee, WI; between CHS and the University of Dayton located in Dayton, OH; and between CHS and Boston College located in Chestnut Hill, MA.

96.     By information and belief, on three separate occasions, KP did knowingly and willfully distribute and disclose Plaintiff-student NAM's Records to six- (6) colleges and universities without the knowledge or consent of Plaintiff-student NAM in violation of his constitutional right to privacy.

97.     The distribution and disclosure of Plaintiff-student NAM's Records, including five- (5) intentionally altered grades, indicated to all college admissions offices and officers that Plaintiff-student NAM had failed to complete all work required for eligibility to a post-secondary educational institution.

98.     By information and belief, in furtherance of the CHS Fraud Scheme, teachers of Plaintiff-student NAM, including all teachers who participated in the fraud scheme and two- (2) teachers that did not participate, were instructed not to share, show, speak or generally provide scores and grades or Records to Plaintiff-student NAM.

## PLAINTIFF-STUDENT NAM WAS VICTIMIZED BY THE CHS FRAUD SCHEME

99.     The disclosure of Records, including intentionally altered grades, would and did make it impossible to gain admission to a post-secondary educational institution. As a result, Plaintiff-student NAM was unable to continue his education.

100.    On or about May 19, 2008, TWM, natural father and next friend of Plaintiff-student NAM, filed a discrimination complaint on behalf of the Plaintiff with the OCR, complaint docket no. 05081238.

101.    The OCR declined to investigate due to private and parochial schools generally do not receive federal funding therefore claiming "no jurisdiction".

102. On or about June 29, 2009, an appeal of the "no jurisdiction" ruling of complaint docket no. 05081238 was filed with the OCR seeking an inquiry.

103. As of the date of this filing herein, the OCR has not responded to our request for appeal.

104. On or about July 5, 2009, Plaintiff-student NAM filed a violation of privacy complaint with the FPCO.

105. Between in or about August 15, 2009 and August 30, 2009, a representative of the FPCO telephoned TWM regarding the Plaintiff-student NAM's privacy complaint. The conversation covered numerous aspects of the entire complaint. During the conversation, the FPCO representative indicated that 'tuition', meaning tuition by charge, was and is the determining factor as to which organizations are subject to FERPA.

106. On or about September 2, 2009, FPCO responded to our complaint, in writing, by stating: "Due to staff limitations and resources, we are unable to review voluminous materials." They provided us with a complaint form and guidance information if we wished to pursue this complaint further.

### PLAINTIFF AFM

107. At all material times, Plaintiff-student Alexandra F. Mackall ("AFM"), was enrolled and in attendance at CHS during the 2007-2008 school year, as required by IC § 20-30-2-3, as added by Pub. L. 1-2005, SEC. 14 and IC § 20-33-2-6 as added by Pub. L. 1-2005, SEC. 17, amended by Pub. L. 242-2005, SEC. 17.

108.    Plaintiff-student AFM was a co-signatory of a personal student/student family contract with CHS. The executed student/student family contract was for the 2007-2008 school year.

### THE FRAUD CONTINUES

109.    By information and belief, teachers of a specific class of students targeted by the CHS Fraud Scheme, including the teachers of Plaintiff-student AFM, were instructed by school management to desist from posting earned test scores, including semester final examination scores, among potentially others, in furtherance of the conspiracy and fraud scheme.

110.    The conspirators would and did surreptitiously cause the alteration of Plaintiff-student AFM's scores and grades, through willful acts of theft by omission, to post upon her education Record.

111.    Schools, including teachers, employees, administrators and board members are custodians of student scores and grades and education Records.

112.    The intentional acts of CHS Defendants clearly indicate the belief that they enjoy ownership of or over student scores and grades.

113.    No school, including CHS, enjoys an ownership role, in any form, at any time, over any score or grade that is yet to be earned by any student within its care.

114.    No school, including CHS, enjoys an ownership role, in any form, at any time, over any score or grade earned by a student within its care, including the Plaintiff.

115.    Likewise, no teacher, no employee, no administrator nor school board member ever enjoys an ownership role, in any form, at any time, over any score or grade earned by a student, including the Plaintiff.

116.    The acquisition of knowledge obtained through a course of study is an asset of immeasurable value to the Plaintiff, the Plaintiff's family and to society in general.

117.    All scores and grades earned by Plaintiff-student AFM are the proprietary property of the Plaintiff, just as all scores and grades earned by Plaintiff-student NAM are his own, just as all scores and grades earned by every other student in attendance at CHS is the owner of his or her own.

118.    All knowledge gained by Plaintiff-student AFM, whether within or without attendance of CHS, was and remains for now and forever more, exclusively her own.

119.    The asset of knowledge acquired at school through a course of study accumulates from year-to-year, and is periodically archived, by rule of law, in the form of a Record.

120.    Education Records are a cumulative accounting of knowledge gained and an intellectual property of ever increasing value, much like a patent or copyright.

121.    Plaintiffs AFM, TWM and SKM, collectively, were, are, and remain, at all times, the co-owners of Plaintiff-student AFM's education Record.

122.    Plaintiffs AFM, TWM and SKM, collectively, will remain, at all times, the co-owners of Plaintiff-student AFM's Record until such time as Plaintiff-student AFM reaches the age of eighteen- (18), at which point, she will assume full and complete ownership and control thereof.

123. The intentional failure to grade or the willful failure to apply scores and grades to a students Record, including the Plaintiff's, would be theft of proprietary property.

124. The total of grade changes, by acts of theft through omission, perpetrated by the conspirators had the effect of reducing and/or eliminating the Plaintiff's overall grade point average.

125. The total of grade changes caused by the conspirators had the effect of significantly devaluing the Plaintiff's proprietary property.

126. CHS maintained an incomplete Record for the Plaintiff as a result of its intentional failure to grade and/or its willful failure to apply scores and grades to the Plaintiff's Record, including semester examination scores, among potentially others.

127. Scores and grades earned are just compensation for a student's work.

128. The intentional failure to grade or the willful failure to apply scores and grades to a students Record, including the Plaintiff's, in addition to theft, in addition to fraud, would amount to a withholding of payment for work performed, to obtain money, and therefore compulsory service based on a claim of indebtedness of a peon (Plaintiff/Plaintiff's family) to a master (the CHS Enterprise) and a violation of the Anti-Peonage Act, Title 42 U.S.C. § 1994.

129. Additionally, the Plaintiff is a minor and therefore subject to compulsory school attendance laws, IC § 20-33-2-6, as added by Pub. L. 1-2005, SEC. 17, amended by Pub. L. 242-2005, SEC. 17.

24

130.    Unlike an adult student or an adult working in a traditional capacity or job, it's
unlawful for a minor student to quit school.

131.    Unlike an adult student, a minor cannot transfer schools without the consent of the
current school, CHS.

132.    The confluence of acts or actions described above demonstrates the unlimited
influence CHS had over the Plaintiff, and all aspects thereof. This reality left the Plaintiff
and the Plaintiff's family without recourse through any investigative or regulatory agency
and a belief that the Plaintiff was essentially 'trapped' and powerless and within the
complete and total control of the CHS enterprise and the CHS Defendants.

133.    Plaintiff endured the entirety of the 2007-2008 school year, without sight or
knowledge of some scores and all or substantially all grades or payment. Upon
information and belief, the conspirators were instructed to refrain from speaking,
showing, telling, advising or generally providing scores and grades to Plaintiff-student
AFM, among other students targeted by the CHS Fraud Scheme.

134.    As a result, Plaintiff-student AFM was subjected to the CHS Fraud Scheme and
involuntary servitude for all or substantially all of the 2007-2008 school year.

135.    Between in or about June 1, 2008 and July 1, 2008, during general workouts with
the Plaintiff's CHS volleyball team, natural father and next friend of Plaintiff-student
AFM, received via email from Defendant JMD, notice that the Plaintiff was no longer
considered a student of CHS while any unresolved dispute by and between Plaintiff-
student NAM and CHS remained unsettled. Furthermore, Defendant JMD ordered

Plaintiff's immediate dismissal from team workouts and instructions of 'not to return to CHS campus' without resolve of the Plaintiff-student NAM/CHS dispute.

136.    On or about June 27, 2008, CHS Defendant JMD stated: "1. We have turned the collection of the past due tuition of 2007-2008 for son and your daughter over to Hopper & Blackwell. We will wait for instructions from them as it is now in their hands. 2. I encourage you to contact John Davis and/or myself regarding the resolution of your threats for litigation and other demands you have made on the school and its administration. Until all of this is resolved, Cathedral High School will not offer your daughter a position in the sophomore class of 2008-2009."

137.    At all material times, Plaintiff-student NAM was an adult over the age of eighteen and therefore, the owner of his own Records and all rights associated with those Records. Any determination to pursue "litigation" associated with the distribution and disclosure of inaccurate grades was and remains the obligatory right of Plaintiff-student NAM, not his parents'.

138.    Failure to waive the legal rights of Plaintiff-student NAM by his parents, even though the parents did not possess those rights, resulted in the retaliation dismissal of Plaintiff-student AFM from CHS by Defendant JMD.

## CAUSES OF ACTION

### COUNT ONE—CONSPIRACY TO VIOLATE RICO

139.    Plaintiffs repeat and reallege all of the allegations above as if fully alleged herein.

26

140.   This count is brought by Plaintiff-student NAM against Defendants, CHS enterprise, JMD, DPL, SJH, DLW, JM, DEF, TRG, KS and KP (collectively, the "RICO Defendants) alleging a cause of action under 18 U.S.C. § 1962(d), for conspiring to violate 18 U.S.C. § 1962(c)[5].

141.   At all relevant times, Plaintiff-student NAM and RICO Defendants were persons pursuant to § 1961(3).

142.   At all relevant times, Cathedral Trustees Inc., d/b/a/ Cathedral High School, a corporation, was an "enterprise" pursuant to § 1961(4).

143.   At all relevant times, the corporation engaged in, and their respective activities affected, interstate commerce, pursuant to § 1961(4).

144.   All of the USPS mailings and numerous telephone calls, faxed communications, emails and other wire transmissions set forth above were made in furtherance of the CHS Fraud Scheme. Therefore, all of these communications were made in violation of the mail and wire fraud statutes. Plaintiff was defrauded by one or more of these mails and wires. This pattern of mails and wires occurred over a period of seven- (7) months. The CHS Fraud Scheme victimized many persons in addition to the Plaintiff.

145.   As detailed above, each of the RICO Defendants agreed to the CHS Fraud Scheme, and also, to further perpetrate it, by covering it up, through the RICO/CHS enterprise.

---

[5] Citations to RICO will hereafter be made as "§ _____", omitting Title 18 of the U.S. Code.

146.    As detailed above, all of the RICO Defendants were in managerial positions in CHS enterprise and also directed subordinates, including teacher Michael Moffatt ("MM"), who is by information and belief, without an Indiana Education License, teacher Greg Bamrick ("GB"), Indiana Education License No. 944877, teacher Heather A. Chandler ("HC"), Indiana Education License No. 1013991 and KP, among others who will be identified through the discovery process, to carry out the fraud scheme, which they did.

147.    Accordingly, each RICO Defendant agreed to participate in the affairs of the CHS enterprise through the commission of the CHS Fraud Scheme and its cover-up, which is a pattern of racketeering activity (mail and wire fraud).

148.    Thus, Plaintiff-student NAM assert claims against all RICO Defendants for conspiring to violate § 1962(c), which prohibits any person employed by or associated with an enterprise from participating in the affairs of the enterprise through a pattern of racketeering activity.

149.    This conspiracy to violate § 1962(c) is a violation of § 1962(d).

150.    As a result of the above-described racketeering activity, Plaintiff has been harmed.

151.    Pursuant to § 1964(c), the Plaintiff is entitled to recover threefold their damages plus costs and attorney's fees from the RICO Defendants.

152.    Pursuant to § 1964(a), the Plaintiff is entitled to appropriate injunctive relief to prevent and restrain future RICO violations, including but not limited to an order by the

Court (a) to require the immediate dissolution of the CHS enterprise, (b) to require all of the Defendants to cease any and all association with the CHS enterprise, and (c) to require the CHS enterprise and all RICO Defendants to turn over any and all information relating to fraud, breach of contract and other criminal, civil and/or administrative violations to the appropriate local, state and federal law enforcement agencies.

## COUNT TWO—COMMON LAW FRAUD AND AIDING & ABETTING FRAUD

153.    Plaintiffs repeat and reallege all of the allegations above as if fully alleged herein.

154.    This count is brought by all Plaintiffs against Defendants CHS enterprise, JMD, SJH, DPL, DLW, JM, DEF, TRG, KS, MM, GB, HC, Rhonda Low ("RL"), Indiana Educator License No. 522448, Bryan Banschbach ("BB"), Indiana Educator License No. 907223, Melinda P. Luckey-Bundy ("MPLB"), Indiana Educator License No. 320271 and Marc Behringer ("MB"), who, by information and belief, has no Indiana Educator License on file with the IDOE, alleging a cause of action for common law actual fraud, constructive fraud, aiding and abetting actual fraud and/or aiding and/or abetting constructive fraud under the common law of the state of Indiana.

155.    As set forth above, the CHS enterprise and the other Defendants damaged the Plaintiffs through their fraudulent acts.

156.    As set forth above, the CHS enterprise and the other Defendants aided and abetted the CHS Fraud Scheme because they knew of the CHS Fraud Scheme and because they provided substantial assistance as set forth above in carrying out the CHS Fraud Scheme.

157.    Each of the Defendants separately and all of the Defendants collectively are liable for all the damages caused by their own respective fraudulent acts and, as a result of their aiding and abetting the CHS Fraud Scheme, for all of the damages caused to Plaintiffs by the CHS Fraud Scheme.

158.    Each of the Defendants separately and all of the Defendants collectively are liable for punitive damages arising from their fraudulent acts insofar as their conduct in furtherance of their fraudulent acts, as set forth above, amounted to egregious and intentional and/or reckless conduct carried out by the Defendants as fiduciaries against the Plaintiffs who were in far inferior position of knowledge and experience.

### COUNT THREE—CONVERSION

159.    Plaintiffs repeat and reallege all of the allegations above as if fully alleged herein.

160.    This count is brought by all Plaintiffs against Defendants CHS enterprise, JMD, SJH, DPL, DLW, JM, DEF, TRG, KS, MM, GB, HC, RL, BB, MPLB and MB alleging a cause of action under IC § 34-43-4.

161.    At all relevant times, the Defendants knowingly and intentionally exerted unauthorized control over the Plaintiffs' proprietary property by failing to compensate the Plaintiffs for the same.

162.    The Defendants' use of grades and records produced by the Plaintiffs without compensation constitutes a misappropriation in violation of the Indiana Offenses Against Property Act, IC § 34-43-4-3.

163.    The Defendants have committed conversion that has proximately caused Plaintiffs to suffer irreparable harm and damages.

164.    Pursuant to IC § 34-24-3-1 Plaintiffs are entitled to recover treble damages, costs and reasonable attorney's fees from the Defendants.

### COUNT FOUR—VIOLATIONS OF INDIANA DECEPTIVE SALES ACT

165.    Plaintiffs repeat and reallege all of the allegations above as if fully alleged herein.

166.    This count is brought by all Plaintiffs against Defendants CHS enterprise, JMD, SJH, DPL, DLW, JM, DEF, TRG, KS, MM, GB, HC, RL, BB, MPLB and MB alleging a cause of action under IC § 24-5-0.5. Specifically, the Plaintiffs allege that they have been damaged as a result of the fraudulent acts, as set forth above, and that this Count Four arises from the purchase of, transfer of and/or providing information about the offering of consumer services in the ordinary course of business as described by IC § 24-5-0.5-2(a)(1).

167.    At all relevant times, Defendants, the CHS enterprise were and are a "supplier" within the meaning of IC § 24-5-0.5-2(a)(3).

168.    At all relevant times, Defendants JMD, SJH, DPL, DLW, JM, DEF, TRG, KS, MM, GB, HC, RL, BB, MPLB and MB were "persons" within the meaning of IC § 24-5-0.5-2(a)(2).

169.    At all relevant times, Plaintiffs were "persons" within the meaning of IC § 24-5-0.5-2(a)(2).

170.   At all relevant times, Defendants, the CHS enterprise, JMD, SJH, DPL, DLW, JM, DEF, TRG, KS, MM, GB, HC, RL, BB, MPLB and MB represented to the public and in fact, conducted their individual and collective affairs as a Roman Catholic, secondary school whose purpose is to "participate, so far as circumstances may warrant, in any activity designed and carried on to promote the general educational needs of the community," in the ordinary course of business.

171.   The Defendants, each separately and collectively as administrators or participants of the CHS Fraud Scheme, conducted trade practices in violation of the law of the state of Indiana. Specifically, Defendants violated IC § 24-5-0.5-3(a)(1), (2), (5), (8) and (10).

172.   As a result of the Defendants, the CHS enterprise, JMD, SJH, DPL, DLW, JM, DEF, TRG, KS, MM, GB, HC, RL, BB, MPLB and MB violation of the IDSA, the Plaintiffs have suffered financial damages and other damages arising from the fraud perpetrated by the Defendants.

173.   The Defendants, the CHS enterprise, JMD, SJH, DPL, DLW, JM, DEF, TRG, KS, MM, GB, HC, RL, BB, MPLB and MB conduct, as described herein, constitutes an "incurable deceptive act" pursuant to IC 24-5-0.5-2(8), in that it is part of a scheme, artifice, or device with the intent to defraud or mislead the Plaintiffs as to the accuracy and lawfulness of their Records.

174.   As a result of its misconduct, Defendants, the CHS enterprise, JMD, SJH, DPL, DLW, JM, DEF, TRG, KS, MM, GB, HC, RL, BB, MPLB and MB are liable to Plaintiffs for their losses in an amount to be determined at trial.

175.    Pursuant to IC § 24-5-0.5-4 Plaintiffs are entitled to recover damages actually suffered or $500, whichever is greater.

176.    Pursuant to IC § 24-5-0.5-4(a) the court may increase damages for a willful deceptive act threefold or $1,000, whichever is greater.

177.    Pursuant to IC § 24-5-0.5-4(a) Plaintiffs are entitled to recover reasonable attorney's fees from the Defendants.

## COUNT FIVE—BREACH OF CONTRACT

178.    Plaintiffs repeat and reallege all of the allegations above as if fully alleged herein.

179.    This count is brought by all Plaintiffs against Defendants CHS enterprise, JMD, SJH, DPL, DLW, JM, DEF, TRG, KS, MM, GB, HC, RL, BB, MPLB, MB and KP.

180.    By its acts and/or omissions, including without limitation the Defendants' failure to provide an education and all that implies, specifically, scores, grades, progress reports and Records, including true and accurate accounting of work performed to Plaintiffs, Plaintiffs family and/or to schools where either Plaintiff sought or were forced to seek admission, the Defendants have breached its contractual obligations owed to Plaintiffs.

181.    As a result of the Defendants' breach, the Plaintiffs have been damaged.

182.    The Plaintiffs request compensatory damages in an amount sufficient to compensate the Plaintiffs for its damages resulting from the Breach of Contract and any and all other just and proper relief.

## COUNT SIX—THEFT OF INTELLECTUAL PROPERTY UNDER THE COMPUTER FRAUD AND ABUSE ACT

183.    Plaintiffs repeat and reallege all of the allegations above as if fully alleged herein.

184.    This count is brought by all Plaintiffs against Defendants CHS enterprise, JMD, SJH, DPL, DLW, JM, DEF, TRG, KS, MM, GB, HC, RL, BB, MPLB, MB and KP, jointly and severally, pursuant to 18 U.S.C. § 1030.

185.    Section 1030 provides in part:

(a)    Whoever-

* * * * *

(2)    intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains—

(C)    information from any protected computer if the conduct involved an interstate or foreign communication;

* * * * *

shall be punished as provided in subsection (c) of this section.

(b)    Whoever attempts to commit an offense under subsection (a) of this section shall be punished as provided in subsection (c) of this section.

* * * * *

(g)    Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief....

No action may be brought under this subsection unless such action is begun within two- (2) years of the date of the act complained of or the date of the discovery of the damage.

186.     Section 1030 of the Computer Fraud Abuse Act ("CFAA") defines the term "protected computer" to include "a computer…which is used in interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2)(B). Each computer used to distribute and disclose Plaintiffs Records in interstate communications and is therefore a "protected computer" within the meaning of § 1030.

187.     Section 1030 of the CFAA defines the term "exceeds authorized access" to mean "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter[6]." By using a computer or computers to knowingly alter scores and/or grades and/or willfully distribute and disclose knowingly false and inaccurate, altered grades of the Plaintiffs, each Defendant has gained "access a computer without authorization or exceeds authorized access" within the meaning of § 1030.

188.     By virtue of the foregoing, Defendants are liable to Plaintiffs for their violations of § 1030 of the CFAA.

189.     Defendants actions complained herein were intentional, reckless and malicious entitling Plaintiffs to an award of punitive damages.

---

[6] 18 U.S.C. § 1030.

35

190.    Plaintiffs, and potentially others, have no adequate remedy of law for Defendants violations of CFAA.

### COUNT SEVEN—CRUEL AND UNUSUAL PUNISHMENT

191.    Plaintiff repeats and realleges all of the allegations above as if fully alleged herein.

192.    This count is brought by Plaintiff-student NAM against Defendants CHS enterprise, JMD, SJH, DPL, DLW, JM, DEF, TRG, KS, MM, GB, HC and KP alleging a cause of action based on the Defendants' willingness to publically reprimand, intimidate, harass, punish and humiliate the Plaintiff throughout the 2007-2008 school year as part of the CHS Fraud Scheme.

193.    Fellow students who committed grievous acts, including those that involved criminal activity, did not receive punishment, reprimands or humiliation equal to that inflicted upon the Plaintiff by the Defendants.

194.    Actions taken by Defendants against Plaintiff-student NAM constitute cruel and unusual punishment.

195.    As a result of the Defendants' actions, the Plaintiff has been harmed.

### COUNT EIGHT—CRUEL AND UNUSUAL PUNISHMENT

196.    Plaintiff repeats and realleges all of the allegations above as if fully alleged herein.

197.    This count is brought by Plaintiff AFM, TWM and SKM, collectively, against Defendants CHS enterprise, JMD, SJH, DPL, DLW, JM, DEF, TRG, KS, RL, BB, MPLB and MB alleging a cause of action based on the Defendants' willingness to publically reprimand, intimidate, harass, punish and humiliate the Plaintiff throughout the 2007-2008 school year as part of the CHS Fraud Scheme.

198.    Fellow students who committed grievous acts, including those that involved criminal activity, did not receive punishment, reprimands or humiliation equal to that inflicted upon the Plaintiff by the Defendants.

199.    Actions taken by Defendants against Plaintiff-student AFM constitute cruel and unusual punishment.

200.    As a result of the Defendants' actions, the Plaintiff has been harmed.

## COUNT NINE—DEFAMATION OF CHARACTER

201.    Plaintiff repeats and realleges all of the allegations above as if fully alleged herein.

202.    This count is brought by Plaintiff-student NAM against Defendants CHS enterprise, JMD, SJH, DPL, DLW, JM, DEF, TRG, KS, MM, GB, HC and KP. Defendants, by openly disseminating false, inaccurate and incomplete information contained in the Plaintiff's Records would and did intimidate, punish, and publicly humiliate Plaintiff. Defendants did defame Plaintiff's character.

203.    As a result of the defamation of his character, Plaintiff-student NAM was ostracized by his peers and suffered great mental anguish and irreparable harm.

**COUNT TEN— DEFAMATION OF CHARACTER**

204.   Plaintiff repeats and realleges all of the allegations above as if fully alleged herein.

205.   This count is brought by Plaintiff AFM, TWM and SKM, collectively, against Defendants CHS enterprise, JMD, SJH, DPL, DLW, JM, DEF, TRG, KS, RL, BB, MPLB and MB. Defendants' failure to speak, show, tell, advise and generally withhold scores and maintained grades contained in the Plaintiffs' Records would and did intimidate, punish, and publicly humiliate Plaintiff. Defendants did defame Plaintiffs' character.

206.   As a result of the defamation of her character, Plaintiff-student AFM was ostracized by her peers and suffered great mental anguish and irreparable harm.

**COUNT ELEVEN—VIOLATION OF EQUAL PROTECTION**
**42 U.S.C. § 1983**

207.   Plaintiffs repeat and reallege all of the allegations above as if fully alleged herein.

208.   This count is brought by all Plaintiffs against all Defendants.

209.   Defendants have intentionally treated Plaintiffs differently pursuant to IC § 20-26-11, Legal Settlement and Transfer of Students; Transfer Tuition.

210.   Section 5 provides in part: "Transfer at request of parent or student; approval; appeal,"

> (a)   "The parents of any student, regardless of the student's age, or the student after the student has become eighteen (18) years of age may

request a transfer from a school corporation…if the student may be better accommodated in the public schools of the transferee corporation. Whether the student can be better accommodated depends on such matters as:

\* \* \* \* \*

(2) curriculum offerings at the high school level that are important to the vocational or academic aspirations of the student."

\* \* \* \* \*

Section 6: Cash Transfers

(b) "A transfer may not be accepted unless the requesting parents or student pays transfer tuition…."

211. It is well established by the courts that, tuition by charge is a contract in return for an education.

212. Students paying tuition to attend elementary or secondary schools, whether public or private, are subject to a contract in return for an education.

213. A contract, in return for an education is not limited by whether or not an elementary or secondary school is privately- or publicly- funded.

214. Therefore, any student paying tuition to attend a public school outside of his or her own school district is subject to a contract that is superior, in terms of rights and

protections, unequal or substantially unequal to the rights and protections of students paying tuition to attend a privately funded school, including the Plaintiffs.

215.     Therefore, any student paying tuition to attend a private school is subject to a contract far inferior and unequal or substantially unequal to the rights and protections guaranteed and enjoyed by students paying tuition to attend a public school outside of his or her own school district.

216.     Transfer students within public school corporations have become increasingly popular among Indiana residents. Recent articles published in the Indianapolis Star newspaper attest to the benefits and popularity of this phenomenon. Reproductions of two such articles have been purchased from the copyright owners and are attached herewith as (Plaintiffs Exhibit 5 and 6).

217.     The Plaintiffs first learned of this inequity upon reading Exhibits 5 & 6 in the Indianapolis Star Newspaper, on or about September 1, 2009.

218.     The foregoing provisions of Indiana Code create an unequal or substantially unequal protected class of students.

219.     Defendants have intentionally treated Plaintiffs differently from others similarly situated and there is no rational basis for the difference in treatment.

220.     As a result of the above-described activity, Plaintiffs' constitutional right to equal protection, as guaranteed by the Fourteenth Amendment of the United States Constitution, has been violated.

221.     As a result of the above-described activity, Plaintiffs have been harmed.

222.    Plaintiffs seek declaratory judgment to prevent and restrain future equal protection violations among all those similarly situated.

223.    Plaintiffs request compensatory damages.

224.    Plaintiffs request punitive damages against the individuals in their individual capacities.

225.    Pursuant to 42 U.S.C. § 1988, the Plaintiffs are entitled to recover reasonable attorney's fees and costs.

## COUNT TWELVE—DEPRIVATION OF RIGHT TO DUE PROCESS
## 42 U.S.C. § 1983

226.    Plaintiff repeats and realleges all of the allegations above as if fully alleged herein.

227.    This count is brought by Plaintiff-student NAM against Defendants, CHS enterprise, SJH, DPL, DLW, JM, DEF, TRG, KS, KP, MM, GB, HC, the IDOE and the USDOE.

228.    TWM, in his capacity as natural father and next friend of Plaintiff, contacted SJH, President of CHS, to discuss violations of the Plaintiff's civil rights as guaranteed by the United States Constitution and the tortuous acts committed against his son.

229.    CHS President SJH would not and did not cease the actions of DPL, DLW, JM, DEF, TRG, KS, KP, MM, GB and HC against Plaintiff. SJH did not grant any relief for the violations of the Plaintiff's constitutional rights.

230.   Upon receiving no relief from SJH, TWM contacted JMD, CHS school board chairman and John Davis ("JD"), CHS lawyer, the IDOE and the OCR to discuss and rectify the matter.

231.   CHS School Board Chairman, JMD and the schools' lawyer, JD did not believe SJH or DPL, DLW, JM, DEF, TRG, KS, KP, MM, GB and HC, participated in any act or action believed to be immoral, illicit or illegal and therefore denied TWM's request for relief.

232.   The IDOE would not get involved nor provide relief, by citing:

   a) no jurisdiction, and

   b) matters concerning student records fall within the USDOE jurisdiction and may be subject to FERPA.

233.   The OCR would not and did not provide any relief claiming "no jurisdiction."

234.   Plaintiff seeks declaratory judgment to prevent and restrain future violations among all those similarly situated.

235.   Plaintiff requests compensatory damages.

236.   Plaintiff requests punitive damages against the individuals in their individual capacities.

237.   Pursuant to 42 U.S.C. § 1988, the Plaintiff is entitled to recover reasonable attorney's fees and costs.

## COUNT THIRTEEN—DEPRIVATION OF RIGHT TO PRIVACY

## 42 U.S.C. § 1983

238.   Plaintiff repeats and realleges all of the allegations above as if fully alleged herein.

239.   This count is brought by Plaintiff-student NAM against all Defendants CHS enterprise, JMD, SJH, DPL, DLW, JM, DEF, TRG, KS, KP, MM, GB, HC, IDOE and USDOE.

240.   A student's Records are sacrosanct and must be treated with the integrity and privacy equal to the protections governing doctor/patient, lawyer/client, among other relationships. The right to privacy is so fundamental that it has been found to draw its protections from the principles of more than one constitutionally protected right.

241.   Upon dissemination of the information contained within the Plaintiff's Records, Defendants did violate the Plaintiff's constitutional right to privacy.

242.   Upon disclosure of the Plaintiff's Records by CHS, CHS did allow, provide, cause and grant immediate access to the Plaintiff's Records by Indiana University-Bloomington, Butler University, Xavier University, Marquette University, University of Dayton and Boston College, all schools subject to FERPA, without the knowledge or consent of the Plaintiff.

243.   The act or acts of providing, causing, allowing and/or granting of access to Plaintiff-student NAM's records without his knowledge or consent, did violate the Plaintiff's right to privacy.

244.    All six- (6) colleges or universities, among potentially others, did accept the Records of Plaintiff-student NAM and did access all information therein as a result of the CHS Defendants' disclosure and grant.

245.    The Plaintiff has been irreparably harmed by the CHS Defendants' actions.

246.    The Plaintiff seeks a judgment declaring the Defendants' actions unconstitutional and unlawful.

247.    Plaintiff requests compensatory damages.

248.    Plaintiff requests punitive damages against the individuals in their individual capacities.

249.    Pursuant to 42 U.S.C. § 1988, the Plaintiff is entitled to recover reasonable attorney's fees and costs.

### COUNT FOURTEEN—VIOLATION OF SUBSTANTIVE DUE PROCESS
### 42 U.S.C. § 1983

250.    Plaintiffs repeat and reallege all of the allegations above as if fully alleged herein.

251.    This count is brought by Plaintiffs against all Defendants.

252.    Federal and municipal education laws violate substantive due process when they infringe on fundamental interests, such as the constitutionally protected rights of privacy, the right of equal opportunity to an education and the freedom to contract, and they can be characterized as arbitrary or conscious shocking, in the constitutional sense.

253.   Here, federal spending legislation was enforced with the intent to restrict Plaintiffs' constitutional rights to privacy and to an education as a result of the Plaintiff's association with a religious school.

254.   A special respect for the individual liberty of religious choice, in life and in education, has long been a part of our culture, and the Defendants' actions constraining Plaintiffs ability to continue an education as a result of Plaintiffs lack of privacy due to Plaintiffs being "better accommodated" by the choice of a religious education requires substantive due process protection because it is arbitrary and conscious-shocking in the constitutional sense.

255.   The Plaintiff seeks a judgment declaring the Defendants' actions unconstitutional and unlawful.

256.   Plaintiff requests compensatory damages.

257.   Plaintiff requests punitive damages against the individuals in their individual capacities.

258.   Pursuant to 42 U.S.C. § 1988, the Plaintiff is entitled to recover reasonable attorney's fees and costs.

## COUNT FIFTEEN—VIOLATION OF ANTI-PEONAGE ACT
### 42 U.S.C. § 1994

259.   Plaintiff repeats and realleges all of the allegations above as if fully alleged herein.

260.    This count is brought by Plaintiff AFM, TWM and SKM, collectively against Defendants CHS enterprise, JMD, SJH, DPL, DLW, JM, DEF, TRG, KS, RL, BB, MPLB, MB and the IDOE.

261.    Plaintiff AFM, TWM and SKM are co-signors of and subject to provisions of a student/student family contract.

262.    Performance or failure to perform under any provision of a student/student family contract is regulated and enforced by the CHS administration, specifically, Defendants SJH, DLW, JM, DEF, TRG and KS.

263.    At no time did CHS Defendants seek removal of Plaintiff-student AFM from CHS for failure to perform under any provision of the student/student family contract.

264.    A student performs work not unlike the work performed by many lawyers. Much of that work is intellectual and involves reading, writing, investigative research, and numerous methods of quantitative expression and analysis. A cumulative accounting of a student's work is maintained throughout his or her career in the form of a Record.

265.    Traditional workers, including a lawyer, have the right to refuse or discontinue employment. No state can make the quitting of work a crime. However, for a student under the age of eighteen, quitting school is a crime and a transfer to any public or non-public school requires the consent of the [transferor] school, including CHS.

266.    Plaintiff-student AFM, at all material times, was and remains, as of this filing, a minor under the age of eighteen.

267.    Scores and grades are a documented quantification of a students course work and represent earned payment for work performed.

268.    During the 2007-2008 school year, numerous students, including Plaintiff-student AFM, were subjected to repeated acts of theft of earned scores and grades by the CHS Defendants, in furtherance of the CHS Fraud Scheme.

269.    Each act of theft resulted in the knowing and intentional failure to make whole student records, including the Records of the Plaintiff.

270.    Intentional failure to make whole the Plaintiffs' Records, by means of theft in furtherance of the CHS Fraud Scheme, amounts to loss of property and deprivation of earned payment.

271.    Deprivation of payment of earned scores and grades, as a result of the CHS Fraud Scheme, which was initiated as a means to compel payment of a purported or claimed debt, amounts to involuntary servitude.

272.    Forcing, causing or generally having a student, including the Plaintiff, perform work without benefit of payment, without the Plaintiffs' consent, without the opportunity or ability to quit or transfer, to satisfy a purported or claimed debt, is therefore compulsory service based on the servant's (Plaintiff) indebtedness to a master (Defendants) and a violation of the Anti-Peonage Act[7].

273.    This Count Fifteen arises out of a climate of fear, both real and perceived. Defendant SJH had shown a willingness to initiate punitive measures, almost at will, and

---

[7] 42 U.S.C. § 1994.

in violation of the student/student family contract, which left the Plaintiff threatened and pressured. As a result of the above-described actions, the Plaintiff was trapped and without options and forced to endure the humiliation, ridicule and emotional anguish brought-on by this unjust and unlawful action.

274.     Forcing a student to work without benefit of just, proper and full compensation, to satisfy a debt, is peonage and has harmed the Plaintiff.

275.     The Plaintiff requests a judgment declaring Defendants' actions discriminatory, unconstitutional, arbitrary, unreasonable and unlawful.

276.     Plaintiff requests compensatory damages.

277.     Plaintiff requests punitive damages against the individuals in their individual capacities.

278.     Pursuant to 42 U.S.C. § 1988, the Plaintiff is entitled to recover reasonable attorney's fees and costs.

**COUNT SIXTEEN—DISCRIMINATION;
DEPRIVATION OF EDUCATION
42 U.S.C. § 1983**

279.     Plaintiff repeats and realleges all of the allegations above as if fully alleged herein.

280.     This count is brought by Plaintiff-student NAM against Defendants CHS enterprise, JMD, SJH, DPL, DLW, JM, DEF, TRG, KS, KP, IDOE and USDOE.

281.     During the college admission process, a search of sorts takes place between each student, including the Plaintiff, and post-secondary educational institutions. Candidates

and schools generally seek the best possible educational fit, among other criteria, that will most likely accommodate the needs and goals of a potential student. This search and the subsequent disclosure and access of records occurred wholly within the government-run educational marketplace.

282.    Any and all students, including the Plaintiff, were and are unable to control distribution, disclosure and access to his or her own Records to any and all post-secondary educational institutions where the student may seek admission.

283.    A student, including the Plaintiff, must have an agent representative from the students' secondary school, including CHS, manage and control the post-secondary admissions process.

284.    An accredited secondary school, including CHS, is an agent of the state and therefore acts on behalf of the state by and between each student, including the Plaintiff, and all post-secondary educational institutions. A post-secondary admission search occurs wholly within the government-run educational marketplace. An agent acts and interacts on behalf of a student, including the Plaintiff, as a means and measure of protecting the integrity of student records and safeguarding the chain of custody during the admission process.

285.    During on or about the week of January 21, 2008, the CHS Defendants, specifically, Defendant KP, as managers and agents of the Plaintiff's admissions process, did knowingly distribute and disclose inaccurate grades and incomplete Records of the Plaintiff to: Indiana University-Bloomington, Butler University, University of Dayton,

Xavier University, Marquette University and Boston College, in furtherance of the CHS Fraud Scheme and without the knowledge or consent of the Plaintiff.

286.   Each of the colleges and/or universities where the Plaintiff sought admission gained access to the Plaintiff's inaccurate grades and incomplete Records as a result of the Defendants disclosure through the USPS and by wire transfer, in furtherance of the CHS Fraud Scheme.

287.   The admissions office and officers of each college and/or university that gained access to the Plaintiff's incomplete Record, which each accepted into their own possession, were unable to make an admission decision or offer admission to the Plaintiff based on the insufficiency of the Records.

288.   Inaccurate grades and an incomplete record in the possession of an admissions office or officer was and is an indication that the student had not completed all of the work required of the student, including the Plaintiff, to achieve promotion and thus, rendered the Plaintiff ineligible for admission to any college or university.

289.   As a result of the willful and intentional distribution, disclosure and allowance or grant of access to the Plaintiff's inaccurate grades and incomplete Records, the Plaintiff was denied the opportunity to continue his education.

290.   As a result of the Plaintiff's denial of a continuing education, he has been harmed.

291.   The Plaintiff requests a judgment declaring defendants' actions discriminatory, unconstitutional, arbitrary, unreasonable and unlawful.

292.   Plaintiff requests compensatory damages.

293.    Plaintiff requests punitive damages against the individuals in their individual capacities.

294.    Pursuant to 42 U.S.C. § 1988, the Plaintiff is entitled to recover reasonable attorney's fees and costs.

## COUNT SEVENTEEN—DISCRIMINATION; RELIGION, RETALIATION
### 42 U.S.C. § 1983

295.    Plaintiff repeats and realleges all of the allegations above as if fully alleged herein.

296.    This count is brought by Plaintiff AFM, TWM and SKM against Defendants CHS enterprise, JMD, SJH, DPL, DLW, JM, DEF, TRG, KS, RL, BB, MPLB, MB, the IDOE and the USDOE.

297.    Between in or about February 1, 2008 and February 15, 2008, Defendant DEF telephoned the Plaintiffs' father and next friend, TWM to discuss the distribution and disclosure of Plaintiff-student NAM's inaccurate grades and incomplete record to six- (6) colleges and universities. During that conversation, Defendant DEF informed TWM that CHS would not and did not have to provide student records to other non-public secondary schools specifically, schools designated as religious-affiliated schools.

298.    An indication of 'would not and did not have to provide student records to other non-public schools' by Defendant DEF was understood and interpreted by TWM to mean the Defendants would not consent or 'allow' the any student, including Plaintiff-student AFM, to transfer to any other non-public secondary school, including other religious-affiliated schools.

51

299.    The parents of Plaintiff-student AFM did willfully and intentionally fail to waive Plaintiff-student NAM's right to sue any all CHS Defendants for actions taken against Plaintiff-student NAM. Due to the age of Plaintiff-student NAM, his parents no longer controlled any rights associated with his Records and therefore did not possess any authority to negotiate or agree to waive any legal rights associated with Plaintiff-student NAM or his Records.

300.    On or about June 27, 2008, in retaliation of Plaintiff's parents' unwillingness and subsequent failure to waive Plaintiff-student NAM's right to sue CHS, Defendant JMD ordered Plaintiff-student AFM dismissed from CHS.

301.    Dismissal of Plaintiff-student AFM was therefore, and remains an exigent circumstance based on the Defendants' willingness and insistence on combining resolution of the contractually separate matters and by further punishing the Plaintiff as a means of pressuring the parents of Plaintiff-student NAM to cause or force waiver of Plaintiff-student NAM's right to sue CHS and any or all CHS Defendants.

302.    As a result, Plaintiff-student AFM and her parents were forced to pursue a secondary school transfer due to the retaliatory dismissal of Plaintiff from CHS.

303.    By indication and belief, or threat, the Plaintiff could not pursue a transfer to any non-public, religious-affiliated secondary school based on the previous discussion between TWM and Defendant DEF.

304.    By indication and belief, the only sure way to achieve transfer from CHS to any other non-public, religious-affiliated school would be by third-party transfer. To achieve such a transfer, the Plaintiff would have to transfer to any publicly funded secondary

school and immediately seek a transfer upon acceptance by the publicly funded school to the non-public, religious-affiliated secondary school of the Plaintiff's choice.

    a)    CHS would be forced to provide Plaintiff-student-AFM's Records to a publicly funded school upon request of or by the publicly funded school. Failure to do so would likely cause an investigation by the IDOE.

305.    Plaintiff-student AFM, by the Plaintiff's parents sought a transfer only to Carmel High School. A public high school located in Carmel, Hamilton County, Indiana.

306.    A transfer of the nature previously described would be extraordinary and would place in jeopardy the Plaintiff's athletic eligibility and therefore, could not be risked.

307.    The Plaintiff had suffered immensely as a result of the CHS Fraud Scheme. The Plaintiff and the Plaintiff's parents did not posses the wherewithal to continue to fight to obtain a transfer to the non-public, religious-affiliated school of the Plaintiff's choice.

308.    As a result of the CHS s' actions, and the general lack of jurisdiction by either or both education regulatory agencies (IDOE and USDOE), Plaintiff-student AFM was denied the opportunity, which was and remains her right, to pursue a religious education at the secondary school of her choice, including a secondary school under the control of the Archdiocese of Indianapolis.

309.    As a result, the Plaintiff was denied religious freedom guaranteed by the constitution.

310.    As a result, the Defendants discriminated against the Plaintiff.

311.    As a result, the Plaintiff was harmed by the discrimination.

312. The Plaintiff requests a judgment declaring Defendants' actions discriminatory, unconstitutional, arbitrary, unreasonable and unlawful.

313. Plaintiff requests compensatory damages.

314. Plaintiff requests punitive damages against the individuals in their individual capacities.

315. Pursuant to 42 U.S.C. § 1988, the Plaintiff is entitled to recover reasonable attorney's fees and costs.

WHEREFORE, the Plaintiffs pray that the court will:

A. Grant a trial by jury.

B. Award compensatory damages against each Defendant separately and all Defendants collectively.

C. Award punitive damages against each Defendant separately and all Defendants collectively.

D. Award treble damages against each Defendant separately and all Defendants collectively for violations of RICO, Conversion and the Indiana Deceptive Sales Act.

E. Grant removal of 501(c)(3) tax-exempt status from the CHS enterprise for its discriminatory and reckless acts.

F. Cease any and all association of CHS Defendants with the CHS enterprise for violations of RICO.

G.      Grant declarative and/or injunctive relief as appropriate.

H.      Award the Plaintiffs reasonable attorney's fees.

I.      Award the Plaintiffs costs.

J.      Grant such further relief to the Plaintiffs as the Court deems just and proper.

This 22nd day of March, 2010.

Respectfully submitted,

Nicholas A. Mackall, and

Timothy W. Mackall and

Stephanie K. Mackall, Plaintiff.

Nicholas A Mackall,
Timothy W. Mackall and
Stephanie K. Mackall
P.O. Box 20096
Indianapolis, IN 46220-0096
(317) 250.8802
tmackall1@msn.com

## APPENDIX

## DEFINED TERMS AND ACRONYMS

| Term/<br>Acronym | Full Description | Page<br>Defined |
|---|---|---|
| AFM | Alexandra F. Mackall | 21 |
| BB | Bryan Banschbach | 29 |
| BIF | Build Indiana Fund | 12 |
| CFAA | Computer Fraud Abuse Act | 35 |
| CHS | Cathedral High School | 11 |
| CHS enterprise | Cathedral Trustees Inc. d/b/a Cathedral High School | 11 |
| DLW | David L. Worland | 14 |
| DPL | David P. Lewis | 14 |
| DEF | Denise E. Farrell | 14 |
| FERPA/Act | Family Educational Rights Privacy Act | 9 |
| FPCO | Family Policy Compliance Office | 9 |
| GB | Greg Bamrick | 28 |
| HC | Heather Chandler | 28 |
| IC | Indiana Code | 11 |
| IDOE | Indiana Department of Education | 10 |
| IGA | Indiana General Assembly | 10 |
| IHSAA | Indiana High School Athletic Association | 12 |
| ISACS | Independent Schools Assoc. of Central States | 18 |
| ISBE | Indiana State Board of Education | 10 |

| JM | James McLinn | 14 |
|---|---|---|
| JD | John Davis | 41 |
| JMD | Joseph M. Dezelan | 14 |
| KS | Kathleen Saum | 14 |
| KP | Kathy Pivonka | 18 |
| MB | Marc Behringer | 29 |
| MPLB | Melinda Pat Luckey-Bundy | 29 |
| MM | Michael Moffatt | 28 |
| NAM | Nicholas A. Mackall | 13 |
| OCR | Office of Civil Rights | 8 |
| PPRA | Protection for Pupils Rights Amendment | 9 |
| Record or Records | Educational History | 15 |
| RL | Rhonda Low | 29 |
| RICO | Racketeer Influenced and Corrupt Organizations | 24 |
| SJH | Stephen J. Helmich | 14 |
| SKM | Stephanie K. Mackall | 16 |
| TRG | Thomas R. Greer | 14 |
| TWM | Timothy W. Mackall | 16 |
| USDOE | United States Department of Education | 8 |
| USPS | United States Postal Service | 19 |